IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PANTHER CREEK MEDICAL CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE PRACTICE MANAGEMENT COMPANY, LLC, VILLAGE PRACTICE MANAGEMENT COMPANY OF HOUSTON, LLC; VILLAGEMD OF SOUTHEAST TEXAS, PA D/B/A VILLAGE MEDICAL, <br><br> Defendants. | Civil Action No. 4:20-cv-2358 <br><br> Jury Trial Demanded |

## ORIGINAL COMPLAINT

Plaintiff, Panther Creek Medical, P.A. ("Panther Creek" or "Plaintiff"), by and through its attorneys, Osha Liang LLP file this Complaint against Defendants Village Practice Management Company, LLC, Village Practice Management Company of Houston, LLC, and VillageMD of Southeast Texas, PA d/b/a Village Medical (collectively "Defendants"), and alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for infringement of Plaintiff's trademarks under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims under the statutory and common laws of the State of Texas, all arising from the Defendants' unauthorized use of Plaintiff's trademarks in connection with the marketing, advertising, promotion, and provision of Defendants' medical-related services.

2. Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Plaintiff Panther Creek, P.A. is a professional association formed under the laws of Texas with physical locations in The Woodlands and provides online medical services via its website. Plaintiff Panther Creek has a principal place of business at 4840 W Panther Creek Drive, Suite 107, The Woodlands, Texas, 77381.

6. On information and belief, Defendant Village Practice Management Company, LLC ("VPMC") is a limited liability company formed under the laws of Delaware with a principal place of business at 125 S. Clark Street, Suite 900, Chicago, Illinois, 60603. On information and belief, Defendant Village Practice Management Company, LLC does business in Houston, Texas and in The Woodlands, Texas.

7. On information and belief, Defendant Village Practice Management Company of Houston, LLC ("VPMC of Houston") is a limited liability company formed under the laws of Delaware with a principal place of business at 9055 Katy Freeway, Suites 100 & 200, Houston, Texas, 77024.

8. On information and belief, Defendant VillageMD of Southeast Texas, PA d/b/a Village Medical ("VillageMD of SETX") is a professional association formed under the laws of Texas with a location at 9055 Katy Freeway, Suite 100, Houston, Texas, 77024.

9. Defendants VPMC, VPMC of Houston, and VillageMD of SETX are collectively referred to as "Defendants."

## FACTS

### A. Plaintiff and its Trademarks

10. Plaintiff is a professional association that provides medical services through its physical clinics and online via its website. Plaintiff has several physical locations throughout The Woodlands, including the Village Medical Center at Panther Creek and the Village Medical Center at Alden Bridge.

11. Plaintiff is the owner of valid trademarks for the wordmark VILLAGE MEDICAL and the associated logo,



both of which are used for medical services ("Plaintiff's Marks").

12. Plaintiff applied for federal registration of the above-displayed VILLAGE MEDICAL logo for "medical services" in Class 044 on April 16, 2019. This application, Serial No. 88387382, was approved by the U.S. Trademark Office's Examining Attorney and published on August 27, 2019.

13. Plaintiff has used Plaintiff's Marks in commerce throughout the United States on its website, in association with telemedicine services, and in Texas through advertising and marketing materials associated with its physical clinics located in The Woodlands, continuously

3

since the early 2000s, in connection with the provision, marketing, and advertising of medical services. Exhibits 1 and 2 includes true and correct copies of representative samples of materials showing Plaintiff's use of Plaintiff's Marks in connection with Plaintiff's provision, marketing, and advertising of medical services.

14. As a result of Plaintiff's widespread, continuous, and exclusive use of Plaintiff's Marks to identify its medical services, and Plaintiff as the source of those medical services, Plaintiff owns valid and subsisting federal statutory and common law rights to Plaintiff's Marks.

15. Plaintiff's Marks are distinctive to both the consuming public and Plaintiff's trade.

16. Plaintiff has expended substantial time, money, and resources in marketing, advertising, and promoting medical services under Plaintiff's Marks.

17. Plaintiff provides medical services under Plaintiff's Marks, both through its website and through its physical locations in The Woodlands, Texas. Below is a representative example of how Plaintiff markets its services through its website:



Exhibit 3.

18. Plaintiff offers and provides services under Plaintiff's Marks to average consumers seeking medical services.

19. The services Plaintiff offers under Plaintiff's Marks are of high quality. Plaintiff ensures the high quality of its services via at least the following:

- Doctor and staff vetting processes through thorough background checks during the hiring process;

- Panther Creek is certified by the National Committee for Quality Assurance as a level 3 patient-centered medical home (PCMH). PCMH is a care and delivery model with care principles of comprehensive, patient-centered, coordinated care committed to quality and performance improvement, committed to patient satisfaction and population health management. Exhibit 4 is a true and correct copy of a photograph of Panther Creek's National Committee for Quality Association Certificate of Recognition.

- Panther Creek is a member of Privia Gulf Coast's Accountable Care Organization (ACO), which was the most successful ACO participating in Medicare Shared Savings Program in Houston. This requires achievements in many quality metrics for Medicare patients' health and satisfaction. *See* Exhibit 5.

20. As a result of Plaintiff's expenditures and efforts, Plaintiff's Marks have come to signify the high quality of services designated by Plaintiff's Marks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

21. Plaintiff's Marks and their associated services have received significant unsolicited coverage in various media, including: (1) Recognition of Panther Creek member Dr. Clifford Yut

5

in the *Best of the Woodlands Awards* for "Best Family Practice Doctor" (ranked third in 2014, 2015 and 2016; ranked second in 2017 and 2020; and ranked first in 2018); (2) Recognition of Panther Creek member Dr. Christopher Prihoda in the *Super Doctors Profile- Texas Rising Star* for years 2012, 2014, 2015 and 2016.  *See* Exhibits 6 and 7 (annotated excerpts of true and correct copies of samples of the foregoing unsolicited media coverage).

        **B.**        **Defendants' Federal Trademark Registration Efforts and Opposition Proceeding**

22.        On information and belief, like Plaintiff, Defendants are also engaged in providing medical services.

23.        Defendants, however, on information and belief, are a much larger company with many more resources and numerous branches in various locations throughout the country, including Texas and Illinois.  On information and belief, Defendants became aware of the value of and goodwill associated with the Plaintiff's Marks and have intentionally launched an infringement campaign on these marks.

24.        On August 30, 2016, Defendant VPMC filed an application at the U.S. Trademark Office for federal registration of the standard character mark VILLAGEMD for "business services in the field of healthcare, namely assisting primary care physicians" in Class 035.  This application (Serial No. 87154979) alleged that the mark had been in use since March 4, 2014.  *See* Exhibit 8.

25.        On June 22, 2018, Defendant VPMC filed an application at the U.S. Trademark Office for federal registration of an associated logo and design of the VILLAGEMD mark,



This application (Serial No. 88010955) alleged that this logo mark had been in use since May 5, 2015.  *See* Exhibit 9.

6

26. The Panther Creek Marks had been in use for more than a decade prior to Defendant VPMC's filing of the applications for federal registration of the VILLAGEMD wordmark and VILLAGEMD logo.

27. Defendant VPMC did not disclose the Panther Creek Marks to the Trademark Office in relation to the applications for the VILLAGEMD wordmark and VILLAGEMD logo even though, on information and belief, VPMC would have known about the Panther Creek Marks at that time.

28. On May 17, 2019, Defendant VPMC filed an application for federal registration of the standard character mark VILLAGE MEDICAL for "home health care services, namely, risk based care for chronically ill patients" in Class 044. This application was assigned Serial No. 88435074. No use in commerce of the mark was alleged in the application. *See* Exhibit 10.

29. On August 5, 2019, the Examining Attorney issued an Office Action refusing VPMC's attempt to register VILLAGE MEDICAL based on likelihood of confusion with Plaintiff's prior-filed application for its VILLAGE MEDICAL logo,



*See* Exhibit 11. The USPTO subsequently suspended VPMC's application in view of the likelihood of confusion with Plaintiff's prior-filed application. *Id.*

30. On July 2, 2019, Defendant VPMC filed another trademark application for federal registration. This application, Serial No. 88497592, was for an associated logo and design,



for "home health care services, namely, risk based care for chronically ill patients" in Class 044. No use in commerce of the mark was alleged in the application. *See* Exhibit 12.

31. As with Defendant VPMC's application for the VILLAGE MEDICAL wordmark, on August 5, 2019, the Examining Attorney issued an Office Action refusing registration of the associated logo based on likelihood of confusion with Plaintiff's prior-filed application for its VILLAGE MEDICAL logo,



*See* Exhibit 13. As with the VILLAGE MEDICAL wordmark application, the USPTO also suspended VPMC's application for its logo in view of the likelihood of confusion with Plaintiff's prior-filed application. *Id.*

32. On information and belief, in view of these refusals to register, Defendant VPMC initiated an opposition proceeding with the Trademark Trial and Appeals Board on October 25, 2019, challenging Plaintiff's pending trademark application ("the TTAB Proceeding"). *See* Exhibit 14.

33. Since shortly after Defendant VPMC initiated the TTAB Proceeding, at least October of 2019, Plaintiff has attempted to reach a settlement with Defendants regarding Defendants' use and Plaintiff's registration of Plaintiff's Marks. The parties' settlement discussions continued throughout 2020 up until shortly before the filing of this complaint.

34. Meanwhile, as Plaintiff continued to engage in what it believed to be good faith settlement negotiations and unbeknownst to Plaintiff, on November 12, 2019, Defendant VillageMD of SETX filed an Assumed Name Certificate in the Office of the Secretary of State of Texas for the name "Village Medical." *See* Exhibit 15.

8

C. **Defendants' Unlawful Activities**

35. On information and belief, beginning only after Plaintiff had been using Plaintiff's Marks for nearly fifteen years, Defendants adopted and began using marks that are confusingly similar to Plaintiff's Marks in Texas and elsewhere. For example, Defendants have adopted and are using the identical wordmark, VILLAGE MEDICAL, and a VILLAGE MEDICAL design logo that is very similar to Plaintiff's. For sake of comparison, Plaintiff's logo and Defendants' VILLAGE MEDICAL logo are shown below:

**Panther Creek's Logo**     **Defendants' Village Medical Logo**

   

36. Similarly, Defendants have adopted and are using the confusingly similar wordmark, VILLAGEMD, and a VILLAGEMD logo that is very similar to Plaintiff's. Plaintiff's logo and Defendants' VILLAGEMD logo are shown below:

**Panther Creek's Logo**     **Defendants' VillageMD Logo**

   

37. The Defendants' logos shown above in Paragraphs 35 and 36 are collectively referred to as the "Infringing Marks."

38. As discussed above, Defendants already applied for federal registration for the marks VILLAGE MEDICAL, U.S. Serial No. 88435074, and VILLAGE MEDICAL and design, U.S. Serial No. 88497592, both of which were refused registration based on likelihood of confusion with Plaintiff's application for VILLAGE MEDICAL and design logo. In other words,

the Trademark Office has already implicitly recognized that Plaintiff has valid trademark rights, even if there is no federal registration for those rights yet, and that Defendants' use of similar marks are likely to cause consumer confusion with Plaintiff's Marks.

39. As discussed above, Plaintiff has been using the VILLAGE MEDICAL brand since the early 2000s, long before Defendants. Because of Plaintiff's long-term use of its VILLAGE MEDICAL logo, consumers associate the VILLAGE MEDICAL brand with Plaintiff.

40. Meanwhile, the Infringing Marks, adopted and used by Defendants are identical and/or confusingly similar to Plaintiff's Marks. First, the Defendants use VILLAGE MEDICAL and VILLAGEMD to identify their nearly identical services and clinics, all of which are in the same exact market of provision of medical services as Plaintiff's. Next, Defendants' logos are confusingly similar to Plaintiff's, as shown above and again here:

**Panther Creek's Logo**  **Defendants' Logos**





41. On information and belief, Defendants have been engaged in the provision, advertising, and promotion of medical services using the Infringing Marks throughout the U.S. Exhibit 16 contains true and correct copy of a screenshot of Defendants' websites showing Defendants' use of the Infringing Marks.

42. On information and belief, the services Defendants have provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Marks are identical or nearly identical to the services Plaintiff provides under Plaintiff's Marks.

43. Plaintiff and Defendants provide medical services to patients, provide patient portal services on their websites, and operate in the same geographic region.

44. On information and belief, Defendants have provided, marketed, advertised, promoted, offered for sale, and sold their services under the Infringing Marks through their website and physical locations, which directly overlap with Plaintiff's channels of trade. Some of Defendants' physical locations are within a 20-mile radius of Plaintiff's physical locations.

45. Like Plaintiff, Defendants market their services via their websites, Google® advertising, and other online media.

46. On information and belief, Defendants offer and sell their services under the Infringing Marks to average consumers seeking medical services, directly overlapping with Plaintiff's consumer base.

47. Defendants' infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' services, and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

48. Defendants' infringing acts have resulted in actual confusion on several occasions, including the following incidents:

- On March 6, 2020, Houston's KPRC 2 Investigates published a news article confirming that two cases of Coronavirus had been treated in "Village Medical" clinics, confusing Defendants with Plaintiff.
- Shortly thereafter, Panther Creek began receiving calls from established patients who were concerned about visiting Panther Creek clinic locations over fear of contracting the virus, not realizing that it was one of Defendant's clinics, not Plaintiff's, that had treated the Coronavirus patients featured in the Houston KPRC article.

- Also on March 6, 2020, the Texas Academy of Family Physicians medical journal published an article discussing treatment of Coronavirus patients in "Village Medical" clinics, illustrating another example of confusion between Defendants and Plaintiff.
- This article resulted in additional calls from established Panther Creek patients who were concerned about visiting Panther Creek clinic locations over fear of contracting the virus. Again, these patients were confused into believing that the medical journal article was describing Plaintiff when, in fact, the article was supposed to be reporting on treatment of Coronavirus patients at one of Defendants' clinics.
- On May 15, 2020 the "Oscar" insurance company, published a flyer offering HMO Medicare Advantage plan services, including services provided by network partner "Village Medical."
- This advertisement resulted in at least one inquiry to Panther Creek from a consumer confused over the false association/designation of origin between Plaintiff and Defendants.

*See* Exhibits 17, 18 and 19.

49.     Additional confusion can be seen by performing a Google® search for "Village Medical," which returns more than two pages' worth of results for Defendants before displaying a single result for Plaintiff Panther Creek.  Exhibit 20.  Even a Google® search for "Panther Creek Village Medical Center" returns Defendants' website as an advertisement at the very top of the search results.  Exhibit 21.

50.     Defendants have been aware of Plaintiff's Marks since at least 2017, when Dr. Clive Fields'[1] practice at the time showed interest in having Plaintiff join up with Defendants, which Plaintiff declined.  On information and belief, Defendants have been aware of Plaintiff's Marks long before that.

---

[1] Dr. Clive Fields is Chief Medical Officer and co-founder of Defendant VPMC and founder of Defendant VillageMD.

12

51. On information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's Marks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's services to the Defendant.

52. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT I
## INFRINGEMENT OF FEDERAL COMMON LAW TRADEMARK RIGHTS

53. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

54. Defendants' unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 43(a) of the Lanham Act.

55. On information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in Plaintiff's Marks, and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

56. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff, and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

57. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs

of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN

58. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

59. Defendants' unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

60. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes false designation of origin and misleading description and representation of fact.

61. On information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

62. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

64. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs

of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## STATE UNFAIR COMPETITION
## TEXAS BUS. & COMM. CODE, § 16.29

65. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

66. The actions of Defendants complained of above constitute unfair competition in violation of the law of the State of Texas.

67. Defendants' use of a confusingly similar name and trademarks, i.e. the Infringing Marks, is calculated to deceive the relevant consuming public into accepting and purchasing Defendants' services in the mistaken belief that they are Plaintiff's services, or that they are sponsored by, connected with, or supplied under the supervision of Plaintiff.

68. Defendants' adoption and use of the Infringing Marks on its services constitutes unfair competition. By such use, Defendants have represented that their services are actually those supplied by Plaintiff. This use creates a likelihood that the public will be confused or deceived.

69. Defendants' actions constitute dilution, unfair competition, palming off, passing off, unjust enrichment and misappropriation of Plaintiff's rights under Tex. Bus. & Comm. Code, § 16.29 and the common law of the State of Texas. Such actions permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Plaintiff to readily obtain customer acceptance of the services offered for sale, and to give Defendants' services a salability they would not otherwise have, all at Plaintiff's expense.

70. As a result of Defendants' acts, Plaintiff has already suffered damage and will continue to suffer damage, while Defendants profit at Plaintiff's expense. Defendants' activities entitle Plaintiff to Defendants' profits and to damages for such act of unfair competition.

15

71. Unless Defendants are enjoined, Plaintiff has no adequate remedy at law and will be irreparably harmed.

72. Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge of conscious disregard of Plaintiff's rights and with intent to cause confusion, dilution, and to trade off Plaintiff's vast good will in its trademarks, making this an exceptional case and entitling Plaintiff to enhanced damages and attorney's fees.

## COUNT IV
## INFRINGEMENT OF COMMON LAW TRADEMARK RIGHTS
## UNDER TEXAS LAW

73. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

74. Defendants' acts described above constitute common law trademark infringement.

75. Because of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer damages including, without limitation, unjust enrichment damages, in an amount to be proven at trial based on Defendants' gross sales less only elements of cost or deduction allowed by this Court.

76. Unless enjoined by this Court, Defendants' above-described conduct will cause irreparable injury, for which Plaintiff has no adequate remedy at law, in the nature of injury to the reputation and goodwill of Plaintiff as well as confusion and deception among customers.

77. Defendants' acts have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiff's rights and with intent to cause confusion, dilution, and to trade off of the vast good will in Plaintiff's trademarks, making this an exceptional case and entitling Plaintiff to enhanced damages and attorney's fees at least as provided under Texas Civil Practices & Remedies Code § 41.003

## COUNT V
## COMMON LAW UNFAIR COMPETITION

78. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

79. Defendants' activities complained of constitute common law unfair competition under Texas common law in that they are likely to cause consumers to believe that Defendants' services originate from the same source as, or are sponsored or approved by Plaintiff, or that there is an association, affiliation or connection between Defendants and Plaintiff.

80. On information and belief, Defendants' actions are with the knowledge of Plaintiff's trademarks and with the intent to cause confusion and/or trade on Plaintiff's reputation and goodwill.

81. Plaintiff has and will continue to be irreparably harmed and damaged by Defendants' conduct and Plaintiff lacks an adequate remedy at law to compensate for this harm and damage.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

1. A judgment is entered against Defendants on all claims;

2. Defendants and all agents, employees, attorneys, and all persons in active concert or participation with any of them, be preliminarily enjoined from and ordered to:

(a) Cease using Plaintiff's trademarks, and any other mark that is confusingly similar to any of Plaintiff's trademarks, including but not limited to the Infringing Marks; cease using Plaintiff's trademarks, or any other mark that is likely to cause confusion, in any manner that violates the rights of Plaintiff; and modify all of Defendants' signage,

17

advertising, social media usage, product packaging, and promotional material to eliminate infringement of Plaintiff's trademarks or any confusingly similar mark;

(b)     Compelling destruction of all infringing works, business materials, brochures, web pages, advertising, signage, temporary signage or logos, invoices, business cards, or business materials, sales decks, and the like within the care custody or control of Defendants that violate the rights of Plaintiff.

3. Defendants and all agents, employees, attorneys, and persons in active concert or participation with any of them, be permanently enjoined from and ordered to:

(a)     Cease using Plaintiff's trademarks, and any other mark that is confusingly similar to any of Plaintiff's trademarks, including but not limited to the Infringing Marks; cease using Plaintiff's trademarks, or any other mark that is likely to cause confusion, in any manner that violates the rights of Plaintiff; and modify all of Defendants' signage, advertising, social media usage, product packaging, and promotional material to eliminate infringement of Plaintiff's trademarks or any confusingly similar mark;

(b)     Compelling destruction of all infringing works, business materials, brochures, web pages, advertising, signage, temporary signage or logos, invoices, business cards, or business materials, sales decks, and the like within the care custody or control of Defendants that violate the rights of Plaintiff.

4. Plaintiff be awarded all damages it sustains as a result of Defendants' infringement and unfair competition, and that said damages be trebled;

5. Plaintiff be awarded statutory damages, costs, and fees as provided for in 15 U.S.C. § 1117(d), and applicable Texas Statutes;

6. Plaintiff recover its costs of this action and prejudgment and post-judgment interest, and attorney fees as provided by Federal Rules of Civil Procedure;

7. Plaintiff be awarded its attorneys' fees and the costs of this action under trademark law, the Lanham Act, Texas law, or Texas common law; and,

8. Plaintiff recover such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable as of right by a jury.

Date: July 8, 2020

Respectfully submitted,

/s/ Tammy J. Dunn
Tammy J. Dunn
State Bar No. 24045660
SDTX No. 562006
Dunn@oshaliang.com
Califf T. Cooper
State Bar No. 24055345
SDTX No. 713685
Cooper@oshaliang.com
Keelin A. Hargadon
State Bar No. 24087668
SDTX No. 2708053
Hargadon@oshaliang.com
OSHA LIANG LLP
909 Fannin Street, Suite 3500
Houston, Texas 77010
Tel. | Fax: 713.228.8600 | 713.228.8778

*Attorneys for Plaintiff, Panther Creek Medical Center P.A.*